Shannon C. McDONALD

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 30, 1998.

Decided March 17, 1998.

Timothy P. Wile, Asst. Counsel In–Charge, and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

No appearance entered for appellee.

Before DOYLE and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge..

The Department of Transportation, Bureau of Driver Licensing (Department) appeals the order of the Court of Common Pleas of Delaware County (trial court) that sustained the appeal of Shannon McDonald from the suspension of her operator's license. We affirm.

On September 5, 1996, McDonald, while operating a vehicle, was stopped by Officer Michael Hajdak, Jr., of the Radnor Township Police Department. After failing field sobriety tests, McDonald was arrested for driving while under the influence of alcohol and taken to a nearby hospital to have a blood-alcohol test performed. At the hospital, McDonald was asked questions by the hospital staff and thereafter was taken into a treatment room by Officer Hajdak. Officer Hajdak supplied McDonald with a form advising her of the implied consent law. After handing the form to McDonald, Officer Hajdak stood behind McDonald and read the form aloud over McDonald's shoulder. At the hearing before the trial court, McDonald testified that this confused her as Officer Hajdak's oral recitation was made at a different pace than her silent reading. Notes of Testimony, p. 30. McDonald then read the form on her own. *Id.* The form provided, in pertinent part, as follows:

1. Please be advised that you are now under arrest for driving under the influence of alcohol or a controlled substance pursuant to section 3731 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of "BLOOD" [hand-written by Officer Hajdak] (breath, blood, or urine. Officer chooses the chemical test.)

3. It is my duty, as a police officer, to inform you that if you refuse to submit to

the chemical test, your driving privilege will be suspended for a period of one year.

4. The constitutional rights you have as a criminal defendant, commonly known as Miranda rights, including the right to speak with a lawyer and the right to remain silent, apply only to criminal prosecutions and do not apply to the chemical testing procedure under Pennsylvania's Implied Consent Law, which is a civil, not criminal proceeding.

5. You have no right to speak to a lawyer, or anyone else, before taking the chemical test requested by the police officer nor do you have a right to remain silent when asked by the police officer to submit to the chemical test. Unless you agree to submit to the test requested by the police officer your conduct will be deemed a refusal and your operating privilege will be suspended for one year.

6. Your refusal to submit to chemical testing under the Implied Consent Law may be introduced into evidence in a criminal prosecution for driving while under the influence of alcohol or a controlled substance.

Exhibit C–1, Reproduced Record, p. 45a. The form also had signature lines for the arresting officer and the "Defendant."

McDonald testified that she became confused when she read the material in paragraphs four and five of the form and asked Officer Hajdak if she could speak to a lawyer or her brother or someone else. She testified that Officer Hajdak replied that she could not make any calls because it was a civil proceeding, not a criminal proceeding. McDonald then asked about the difference between the two and the Officer responded to her question. McDonald testified, however, that she was still confused about the different proceedings and why she could not speak with an attorney when Paragraph 4 indicated that she had the right to consult with an attorney. N.T., pp. 30–31. She then testified that the consent form was taken from her as she was trying to sign it and while she was asking whether she could call an attorney or her brother. *Id.*, p. 32. She further testified that she grabbed the form

back from the officer so that she could sign it, but that it was taken away from her again. *Id.* The form contains the first two letters of a signature of McDonald's first name. McDonald never stated to Officer Hajdak that she would or would not submit to a blood test.

Officer Hajdak testified that McDonald's questioning took approximately ten to fifteen minutes and that he took the form away from McDonald because she was "just playing" with him. He testified that she wrote the "S" then stopped to ask questions, and wrote the "h" and stopped again. It was at that point that he took the form away and deemed her behavior a refusal. N.T., pp. 9–10. McDonald testified that she did not believe there was a pause in her attempt to sign the form and she denied that she was playing around, insisting that she simply wanted to comprehend before signing. N.T., p. 34. Over objection not ruled upon by the trial court, McDonald testified that she was consenting to the blood test by signing the form. *Id.*

As a result of McDonald's deemed refusal to submit to a chemical test, McDonald's operator's license was suspended for one year pursuant to Section 1547(b) of the Vehicle Code, *as amended,* 75 Pa.C.S. § 1547(b). McDonald appealed the suspension; and a hearing was convened before the trial court, resulting in the testimony summarized above. The trial judge found the testimony of McDonald to be credible. He further found that by attempting to sign the form, McDonald was assenting to the blood test and believed McDonald's testimony in this regard. Accordingly, the trial court sustained McDonald's appeal and rescinded the license suspension. This appeal by the Department followed.[1]

In a driver's license suspension appeal, this Court's scope of review is limited to determining whether the trial court committed an error of law or an abuse of discretion and whether the trial court's findings of fact are supported by substantial evidence. *Commonwealth v. Danforth,* 530 Pa. 327, 608 A.2d 1044 (1992). Additionally, we must re-

---

1. McDonald, appearing *pro se,* was precluded from filing a brief.

view the evidence in the light most favorable to the party that prevailed before the trial court. *Department of Transportation, Bureau of Driver Licensing v. Malizio*, 152 Pa.Cmwlth. 57, 618 A.2d 1091 (1992).

The Department argues that the trial court erred by concluding that McDonald's response to Officer Hajdak's request to submit to a blood test did not constitute a refusal. In making this argument, the Department emphasizes well-established case law that holds (1) that the question of whether a licensee has refused to submit to a chemical test is one of law based upon facts found by the trier of fact, and (2) that anything less than an unqualified, unequivocal assent to a request to submit to a chemical test constitutes a refusal. *See Department of Transportation v. Renwick*, 543 Pa. 122, 669 A.2d 934 (1996); *Mueller v. Department of Transportation, Bureau of Driver Licensing*, 657 A.2d 90 (Pa.Cmwlth.) *(en banc)*, *petition for allowance of appeal denied*, 542 Pa. 637, 665 A.2d 471 (1995). The Department's argument goes on to select portions of Officer Hajdak's testimony from the hearing before the trial court to demonstrate that McDonald's behavior, as a matter of law, constituted less than an unqualified and unequivocal assent to submit to the blood test.

The difficulty with the Department's argument is that the trial court did not make a finding that Officer Hajdak's testimony was credible. Instead, the trial court found McDonald's testimony to be credible. The trial court further found that McDonald was confused regarding the information on the form supplied by Officer Hajdak, that she was agreeing to take the blood test by attempting to sign the form taken away from her by Officer Hajdak, and that she was willing to provide a blood sample. The question before us is whether McDonald refused to submit to a chemical test as a matter of law under the facts found by the trial court, not under the testimony the Department prefers.[2] *See Department of Transportation, Bureau of Driv-*

*er Licensing v. Ingram*, 538 Pa. 236, 648 A.2d 285 (1994) (questions of credibility and conflicts of evidence in license suspension cases are for the trial court to resolve).

The sequence of events, based upon the findings of the trial court, is as follows: Officer Hajdak handed McDonald the form containing the information substantially quoted above. Officer Hajdak read the form aloud while McDonald read the form silently. This procedure confused McDonald. McDonald then read the form on her own. McDonald was confused about certain matters and questioned Officer Hajdak about her right to call an attorney or other persons and the difference between civil and criminal proceedings. Officer Hajdak answered her questions. During this time, McDonald began to sign the form. The form was taken from McDonald, and McDonald took the form back to sign. The form was taken from her again before she could complete her signature. McDonald was agreeing to submit to the blood test by signing the form; and this was apparently understood by Officer Hajdak, otherwise there was no reason to prevent McDonald from signing the form when the Officer told McDonald that he was registering McDonald's response as a refusal. McDonald's questioning took ten to fifteen minutes according to Officer Hajdak's testimony.

This Court has held that it is not a refusal, for purposes of Section 1547(b) of the Vehicle Code, when a licensee delays a decision because of confusion as to his or her rights and then assents to submit to a chemical test when those rights are made clear. *Armstrong v. Department of Transportation, Bureau of Driver Licensing*, 695 A.2d 930 (Pa. Cmwlth.1997). That is essentially the situation presented to us in this appeal. McDonald began to sign the form provided her, acknowledging her assent to a blood test, after Officer Hajdak explained the matters that confused her on the form.[3] We thus

---

2. The Department does not challenge the trial court's findings of fact, only its conclusions of law.

3. Our Supreme Court has acknowledged the confusion inherent in these cases, when two pro-

ceedings, one criminal and the other civil, are essentially being processed at the same time by the arresting officer. On the one hand, the operator has a right to counsel and to remain silent when arrested for the criminal charge of driving under the influence. On the other hand, the

cannot determine that ten to fifteen minutes of questioning concerning the licensee's rights when confused constitutes a refusal. *See also Ingram* (although motorist was provided with the warnings required by law regarding the implied consent law, the trial court's credibility determination that the motorist was confused concerning his rights is sufficient to sustain the motorist's appeal of his or her license suspension).

We understand that Officer Hajdak's testimony presented a different picture of McDonald's behavior and seriousness than that presented by McDonald and, if accepted as credible, could support a legal determination that McDonald refused to submit to the blood test for purposes of Section 1547(b) of the Vehicle Code. That is not the case be-

---

operator does not have benefit of those rights when asked to submit to a chemical test, although the results of that test would necessarily be a significant factor in the criminal proceeding. *See Department of Transportation, Bureau of*

fore us, however. The case before us sets forth unchallenged findings of fact based upon the credible testimony of the licensee. Accordingly, the trial court must be affirmed.

### ORDER

AND NOW, this 17th day of March, 1998, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is hereby affirmed.

---

*Driver Licensing v. Scott,* 546 Pa. 241, 684 A.2d 539 (1996).