# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Adam Conrad Weiser,            :
            Appellant        :
                            :   No. 722 C.D. 2023
                            :
        v.                 :
                            :   Submitted: September 9, 2024
Commonwealth of Pennsylvania,   :
Department of Transportation,     :
Bureau of Driver Licensing        :

BEFORE:   HONORABLE ELLEN CEISLER, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                **FILED: October 22, 2024**

Adam Conrad Weiser (Licensee) appeals from an order entered in the Court of Common Pleas of Northumberland County (trial court) on May 30, 2023, denying Licensee's statutory appeal from a 12-month suspension of his operating privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation (PennDOT), Bureau of Driver Licensing (Bureau). Licensee's operating privilege was suspended pursuant to what is known as the Vehicle Code's Implied Consent Law, 75 Pa.C.S. § 1547(b), as a result of Licensee's refusal to submit to chemical testing. Upon review, we affirm.

## I. BACKGROUND[1]

On July 1, 2022, Licensee was pulled over by Trooper Murray (Trooper) of the Pennsylvania State Police on suspicion of driving under the influence.[2] At the scene, Trooper read the DL-26B form to Licensee. Licensee understood the form and initially refused to submit to a chemical test. Trooper then transported Licensee to the hospital. On the way there, Licensee vacillated between refusing a blood test and expressing his willingness to submit to a blood test. At the hospital, Licensee's vacillating carried on for about 5 or 10 minutes. Despite already understanding the form, Licensee insisted on reading it before signing it. Licensee supposedly read the form for a significant amount of time without signing it. Trooper interpreted Licensee's supposed reading of the form and lack of signature as a refusal to submit to a blood test.

A few weeks later, Licensee was informed by PennDOT that his driving privilege was suspended for one year for refusing to submit to a chemical test. Licensee appealed to the trial court, and a hearing was held on May 30, 2023. At the end of the hearing, the trial court found that Licensee had refused to submit to a blood test and denied Licensee's appeal. Thereafter, Licensee appealed to this Court, and the trial court provided a Pa.R.A.P. 1925(a) Statement explaining its ruling.

---

[1] Unless otherwise stated, we adopt the statement of facts from the trial court's opinion, which is supported by substantial evidence of record. *See* Trial Ct's 1925(a) Statement, 10/19/23, at 1-2 (unpaginated); *see also*, Notes of Testimony (N.T.), 5/30/23, at 52-53 (ruling from the bench and explaining credibility findings).

[2] We focus our recitation of the facts only on the facts related to the Trooper reading Licensee the DL-26B form and the events that followed because Licensee conceded that the only relevant issue was "whether or not there was appropriate notice for the [DL-26B] [form]." N.T. at 5-6. Thus, Trooper's testimony pertained only to that.

## II. ISSUE

Licensee asserts that the trial court erred in finding that he refused to submit to a blood test. Appellant's Br. at 8. Specifically, Licensee argues his initial conduct was not a refusal because he merely "balked" at submitting to a blood test and then "almost immediately reversed himself." *Id.* at 9. Further, Licensee argues that once at the hospital, he never affirmatively refused a blood test but rather was attempting to read the form when Trooper decided that Licensee reading the form constituted a refusal. *See id.* at 9-12.

In response, the Bureau contends that the trial court's conclusion that Licensee refused to submit to a blood test is supported by its finding that Licensee failed to give less than an unqualified and unequivocal assent to Trooper's request. Bureau's Br. at 13.

## III. DISCUSSION[3]

To sustain a license suspension, the Bureau has the burden of establishing:

> (1) the licensee was arrested for drunken driving by a police officer having reasonable grounds to believe that the licensee was driving while under the influence, (2) the licensee was requested to submit to a chemical test, (3) the licensee refused to do so and (4) the licensee was warned that refusal would result in a license suspension. Once [PennDOT] meets this burden, the burden shifts to the licensee to establish that he or she either was not capable of making a knowing and conscious refusal or was physically unable to take the test.

---

[3] Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by substantial evidence and whether the trial court committed an error of law or an abuse of discretion. *Stevens v. Dep't of Transp., Bureau of Driver Licensing*, 309 A.3d 193, 200 (Pa. Cmwlth. 2024). Additionally, we must review the evidence in the light most favorable to the party that prevailed before the trial court. *McDonald v. Dep't of Transp., Bureau of Driver Licensing*, 708 A.2d 154, 155-56 (Pa. Cmwlth. 1998).

3

*Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013) (internal citation omitted). Here, Licensee only disputes the third element, *i.e.*, whether Licensee refused to submit to a chemical test. *See generally* Appellant's Br.; Hr'g Tr., 5/30/23, at 5-6.

"The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). Anything less than an unqualified, unequivocal assent constitutes a refusal to submit to a blood draw. *Dep't of Transp. v. Renwick*, 669 A.2d 934, 939 (Pa. 1996). An explicit refusal expressed in words is not necessary. *Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 497 (Pa. Cmwlth. 2018). "Rather, a licensee's overall conduct demonstrating an unwillingness to assent to a request for chemical testing may constitute a refusal." *Curry v. Dep't of Transp., Bureau of Driver Licensing*, 318 A.3d 1012, 1022 (Pa. Cmwlth. 2024) (citations omitted). Accordingly, it is not a refusal "when a licensee reasonably delays a decision because of confusion as to his or her rights and then assents to submit to a chemical test when those rights are made clear." *McCloskey v. Dep't of Transp., Bureau of Driver Licensing*, 722 A.2d 1159, 1162 (Pa. Cmwlth. 1999) (citing *McDonald v. Dep't of Transp., Bureau of Driver Licensing,* 708 A.2d 154, 156 (Pa. Cmwlth. 1998)). Conversely, when a licensee is not confused but merely stalling for time, their conduct constitutes a refusal. *McCloskey*, 722 A.2d at 1163. Additionally, "once a licensee refuses chemical testing, the refusal cannot be vitiated by a later assent." *Vora v. Dep't of Transp., Bureau of Driver Licensing*, 79 A.3d 743, 747 (Pa. Cmwlth. 2013).

4

Here, the trial court's factual findings were supported by substantial evidence and support the legal conclusion that Licensee refused to submit to a blood test. Trooper testified that he read the DL-26B form to Licensee at the scene and that Licensee understood the form. N.T. at 6, 52-53. Initially, Licensee refused to submit to a blood draw, but on the way to the hospital, "he changed his mind" and "kept going back and forth throughout the whole car ride to the hospital." *Id.* at 6. This initial refusal and subsequent vacillation established that Licensee refused to submit to a blood draw. *See Vora*, 79 A.3d at 747. Further, the trial court did not credit Licensee's explanation that he was reading the form at the hospital to understand his legal rights because Trooper already read the form to Licensee and Licensee testified that he understood the form. N.T. at 36, 52-53. Accordingly, Trooper correctly perceived Licensee's supposed reading of the form as a stalling tactic that constituted a refusal. *See McCloskey*, 722 A.2d at 1163. Therefore, the trial court's finding that Licensee refused to submit to a blood draw was supported by substantial evidence and free from legal error.

Licensee attempts to distinguish the instant case from *McCloskey* and argues that the instant case is controlled by *McDonald*. Appellant's Br. at 11-12. Licensee's argument is unpersuasive.

In *McDonald*, the trial court credited the licensee's testimony that she asked the officer questions because she was confused as to her legal rights and as she attempted to sign the form the officer took it away from her. *McDonald*, 708 A.2d at 155-56. Based on that credited testimony, this Court affirmed the trial court's order sustaining the licensee's appeal because we concluded that the licensee promptly assented to the blood test once her rights were made clear. *Id.* at 156-57. We did note, however, that had the trial court credited the officer's testimony, it

5

could have supported the legal determination that the licensee refused to submit to the blood test. *Id.*

*McDonald* is clearly distinguishable from the instant case because, here, the trial court found that Licensee understood the content of the form. *See* N.T. at 52-53. Specifically, the trial court found Licensee's assertion that he was reading the form to "fully understand" not credible because he "testified that he understood what the Trooper read to him and knew that he was required to submit to a blood draw." *Id.*; 1925(a) Statement at 2. In this regard, the instant case is analogous to *McCloskey*.

In *McCloskey*, we affirmed the trial court's order denying the licensee's statutory appeal because the licensee refused to submit to a blood draw. *McCloskey*, 722 A.2d at 1163. The *McCloskey* Court found that *McDonald* was distinguishable because unlike *McDonald*, "[t]he trial court found herein that [the] licensee's conduct belied his claim that he was confused. The trial court clearly found that [the] licensee was not confused but rather was stalling for time." *Id.* (footnote omitted). Similarly, here, the trial court found that Appellant's insistence on reading the form before signing it was not credible because Appellant testified that he understood what the trooper read to him and knew that he was required to submit to a blood draw. N.T. at 52-53; 1925(a) Statement at 2.

## IV. CONCLUSION

Licensee refused to submit to a chemical test. This initial refusal could not be cured by his later assent. *Vora*, 79 A.3d at 747. Further, unlike the licensee in *McDonald*, whose testimony established that she promptly assented to a blood test upon understanding her rights, Licensee was not reading the form to understand his legal rights but rather was merely stalling. *See McCloskey*, 722 A.2d at 1163.

6

This was rightly interpreted by the trial court as a further refusal to submit to a chemical test. Therefore, the trial court is affirmed.


_____
**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Adam Conrad Weiser,            :
          Appellant     :
                      :   No. 722 C.D. 2023
          v.         :
                      :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing      :

# **O R D E R**

AND NOW, this 22nd day of October, 2024, the order of the Court of Common Pleas of Northumberland County, entered May 30, 2023, is AFFIRMED.

 

_____

**LORI A. DUMAS, Judge**